1  Gregory A. Rougeau (194437)
   BRUNETTI ROUGEAU LLP
2  235 Montgomery Street, Suite 410
   San Francisco, California 94104
3  Telephone: (415) 992-8940
   Facsimile: (415) 992-8915
4  E-mail: grougeau@brlawsf.com

5  Counsel for Debtor/Defendant
   ARTEM KOSHKALDA
6

7

8                    UNITED STATES DISTRICT COURT

9                   NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11

| | |
|---|---|
| In re:<br><br>ARTEM KOSHKALDA,<br><br>Debtor.<br>_____<br><br>SEIKO EPSON CORPORATION and EPSON AMERICA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ARTEM KOSHKALDA, an individual,<br><br><br>Defendant. | Dst. Crt. Case No. 5:18-cv-03124-BLF<br><br>Bankr. Crt. Case No. 18-30016-HLB<br><br>Chapter 7<br><br>Adversary Proc. No. 18-03020-HLB<br><br>**DEBTOR AND DEFENDANT ARTEM KOSHKALD'S OPPOSITION TO MOTION BY PLAINTIFFS SEIKO EPSON AMERICA, INC. (A) TO WITHDRAW THE REFERENCE AND (B) TO TRANSFER CASE**<br><br>Date: November 1, 2018<br>Time: 9:00 a.m.<br>Place: Courtroom 3 (5th Floor) |

## TABLE OF CONTENTS

Page

INTRODUCTION ......................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 2

    I. BACKGROUND ................................................................................................ 2

    II. THE INFRINGEMENT ACTION .......................................................................... 3

         A. The Seizure Orders ................................................................................ 3

         B. Terminating Sanctions Imposed On Art And The Debtor ............................. 3

    III. COMMENCEMENT OF THE DEBTOR'S BANKRUPTCY CASE,
       AND EPSON'S NONDISCHARGEABILITY ACTION ......................................... 7

LEGAL ARGUMENT .................................................................................................. 8

    I. STANDARDS APPLICABLE TO WITHDRAWAL OF THE BANKRUPTCY
      REFERENCE ...................................................................................................... 8

    II. MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT
      WARRANTED .................................................................................................... 9

    III. PERMISSIVE WITHDRAWAL OF THE REFERENCE IS ALSO NOT
      APPROPRIATE ................................................................................................ 10

         A. Efficient Use Of Judicial Resources ....................................................... 10

         B. Delay And Costs To The Parties ............................................................. 11

         C. Uniformity Of Bankruptcy Administration ................................................ 11

         D. Prevention Of Forum Shopping .............................................................. 12

    IV. THIS ADVERSARY PROCEEDING SHOULD NOT BE TRANSFERRED
      TO NEVADA .................................................................................................... 13

         A. The Interests Of Justice Will Not Be Served By Transferring
           This Case ............................................................................................. 13

         B. The Convenience Of The Parties Weighs Strongly Against Transfer
           Of The Litigation .................................................................................. 15

CONCLUSION ......................................................................................................... 17

# TABLE OF AUTHORITIES

1

2                                                                                    **Page**

3 **Cases**

4
5 *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2nd Cir.1991) ........................................ 9

6 *Dwight v. TitleMax of Tenn., Inc.,* 2010 WL 330339 (E.D. Tenn. 2010) .................................. 13

7 *Facebook, Inc. v. Vachani*, 577 B.R. 838 (N.D. Cal 2017) .......................................... 12

8 *Frazier v. Lawyers Title Ins. Corp.* (*In re Butcher*), 46 B.R. 109, 113 (Bankr.

9       N.D. Ga. 1985)........................................................................................................ 16

10 *FTC v. First Alliance Mortgage Co.* (*In re First Alliance Mortgage Co.*), 282

11       B.R. 894, 902 (C.D.Cal.2001) ................................................................................ 10

12 *Hechinger Inv. Co. of Del., Inc. v. M.G.H. Home Improvement, Inc.* (*In re*

13       *Hechinger Inv. Co. of Del., Inc.*), 288 B.R. 398, 403 (Bankr. D. Del.

14       2003)........................................................................................................................ 16

15 *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.,* 355 B.R. 214, 222 (D. Haw. 2006) ................... 9

16 *In re Bauer*, 2010 WL 1905087 (Bankr. E.D. Tenn 2010)........................................... 16

17 *In re Coe–Truman Techs., Inc.,* 214 B.R. 183, 185 (N.D.Ill.1997)...................................... 9

18 *In re EPD Inv. Co. LLC,* 2013 WL 5352953 (C.D. Cal. Sept. 24, 2013) ................................ 10

19 *In re Gurley,* 215 B.R. 703 (Bankr. W.D. Tenn. 1997)................................................ 13

20 *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990) ........................................ 9

21 *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009).................................................. 11

22 *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2nd Cir. 1993)................................. 10, 12

23 *In re Rosales*, 2013 WL 5962007 (N.D. Cal. Nov. 7, 2013) ........................................ 10

24 *In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 952 (7th Cir.1996) ................................... 9

25 *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 124

26       F.3d 999, 1008 (9th Cir.1997) ................................................................................ 9, 10

27 *Son v. Coal Equity, Inc. (In re Centennial Coal, Inc.),* 282 B.R. 140, 148

28

1  (D.Del.2002) ................................................................................................. 14

2  *Steed v. Buckalew (In re Rivas),* 2009 WL 3493597 (Bankr. E.D. Tenn. 2009) ........................ 13

3  *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001) ................................... 14, 15

4

5  **Statutes**

6  11 U.S.C. § 523(a)(2) ......................................................................................................... 7

7  11 U.S.C. § 523(a)(6) ......................................................................................................... 7

8  11 U.S.C. § 727(a)(3) ......................................................................................................... 7

9  11 U.S.C. § 727(a)(5) ......................................................................................................... 7

10  11 U.S.C. § 727(a)(7) ......................................................................................................... 7

11  28 U.S.C. § 157(d) ......................................................................................................... 8, 10

12  28 U.S.C. § 157 (c)(1) ......................................................................................................... 11

13  28 U.S.C. § 157(b)(2) ......................................................................................................... 11

14  28 U.S.C. § 1412 ................................................................................................................. 13

15

16  **Rules**

17  Federal Rule of Bankruptcy Procedure, Rule 45(b)(2) ....................................................... 16

18

19

20

21

22

23

24

25

26

27

28

ARTEM KOSHKALDA, the debtor in the above-captioned bankruptcy case and defendant in the above-captioned Adversary Proceeding (the "Debtor" or "Defendant") respectfully opposes the Motion for (A) an order withdrawing the (automatic) reference by the United States District Court for the Northern District of California (the "District Court") to the United States Bankruptcy Court for the Northern District of California; and (B) an order transferring the Adversary Proceeding to the United States District Court for the District of Nevada, Reno Division (the "Motion") (Dkt. 1-1) filed by and Plaintiffs Seiko Epson Corporation and Epson America, Inc. (collectively, "Epson" or the "Plaintiffs"), as follows:

## **INTRODUCTION**

Plaintiffs' Motion should be denied; it is completely without merit.

Through the Motion, Plaintiffs would have the Court believe that this core bankruptcy matter is simply litigation concerning trademark infringement.  It is not.

As recently determined by Judge Blumenstiel, most of the claims asserted by Plaintiffs do not concern alleged infringement by the Debtor.  The first through fifth claims for relief seek denial of discharge or a determination of nondischargeability of Epson's alleged claim against the Debtor based on alleged fraudulent transfers of real property, failure to preserve records, failure to explain loss of assets, and "wrongful acts concerning an insider."

Only two of the seven claims asserted by Epson in this case- the sixth and seven claims, respectively- concern the infringement Epson alleges the Defendant engaged in. The other claims do not.  And as to those claims, the Bankruptcy Court has granted Epson relief from the automatic stay to permit them to be litigated in Nevada.

Most recently, the Bankruptcy Court denied a motion made by Epson to stay discovery as to the first through fifth claims described above, as they do not concern alleged infringement by the Debtor.  With discovery underway, there is no conceivable reason why this Court should withdraw the reference and take the unprecedented step of transferring this core bankruptcy matter to Nevada. Neither the relevant statutory provisions nor the controlling case law interpreting those provisions favor Plaintiffs' position. To the contrary, this Adversary Proceeding is more appropriately left to the Bankruptcy Court in which it was originally

1  filed.  Withdrawal of the reference would serve no legitimate purpose and would only

2  encourage further delay, forum shopping and other gamesmanship by Epson. The Motion

3  should be denied.

## STATEMENT OF FACTS

**I.      BACKGROUND.**

As set forth in the Declaration of Artem Koshkalda filed concurrently herewith, the Debtor is a real estate investor, and, through ART LLC ("ART"), was in the office supply business.

The Debtor established ART in February 2012, selling computer printers as its primary business, and, to a lesser extent, ink cartridges and beauty products.  Epson ink cartridges were a small percentage of the company's sales, as its primary business was printers and it sold, in addition to Epson, ink cartridges for HP, Brother, Canon, and Lexmark printers.

ART bought genuine Epson cartridges for a low price abroad and sold them domestically at a higher price, but a price that was lower than what Epson was charging its own customers.  This was possible because Epson's pricing model discriminates between its U.S.-based customers and its international customers.  Epson sells printers in the United States at a low price but sells their ink cartridges at a steep price.  In Asia, Epson sells printers at a steep price, but prices its ink cartridges very inexpensively.  There is no difference in the ink or the printers – so any sophisticated consumer would buy their ink abroad and their printers domestically.  Epson forces its customers to pay higher prices by designing its U.S-sold printers to require a chip that it inserts in its U.S.-sold cartridges which is incompatible with the chips in cartridges it sells abroad.  Notably, nowhere in Epson's pleadings does it deny this practice.

ART began purchasing genuine Epson ink cartridges from suppliers in China and elsewhere, importing them into the U.S., and then selling them to its customers.  These were bought in bulk, with the cartridges still in their original vacuum-sealed bags.  Among its customers were InkSystem and Lucky Print.  In addition to selling them genuine Epson ink cartridges bought in China, ART also sold InkSystem and Lucky Print a chip that could be inserted into the cartridges bought in China so that they would work in Epson printers sold in

1  the U.S.

2      ART *never* sold Epson cartridges in an altered state, nor did it ever place, or alter, an

3  Epson trademark on the cartridges. It did not infringe upon Epson's trademarks.

4  **II.     THE INFRINGEMENT ACTION**

5      **A.     The Seizure Orders.**

6      There is no dispute that on September 8, 2016, Epson commenced the Infringement

7  Action,[1] and that, five days later, on September 13, 2016, the Nevada District Court issued its

8  "Temporary Restraining Order and Order for Seizure and Impoundment" (the "Seizure Order")

9  (Docket No. 9 in the Infringement Action).[2]

10      The Debtor absolutely denies that either he or ART were engaged in any infringing

11  activity or wrongful conduct. As has been attested to on multiple occasions by the Debtor in his

12  bankruptcy case, ART (unlike other defendants named in the Infringement Action) has never

13  made or sold remanufactured ink cartridges. ART sold computer printers as its primary

14  business, and, to a lesser extent, ink cartridges and beauty products. The sale of *genuine* Epson

15  ink cartridges was but a small percentage of the company's sales, as its primary business was

16  printers, and it sold- in addition to Epson cartridges- ink cartridges for HP, Brother, Canon, and

17  Lexmark printers.

18      **B.     Terminating Sanctions Imposed on ART and the Debtor.**

19      On August 3, 2017, U.S. Magistrate Judge Cooke issued a recommendation that the

20  District Court enter a terminating sanction against all defendants, that their answers be stricken,

21

22

23

24

---

25  [1] The "Infringement Action," as defined by the parties in this case, is *Seiko Epson Corporation et al. v.*
    *InkSystem LLC et al., Case No. 3:16-cv-00524- RJC-VPC* in the United States District Court for the
26  District of Nevada, Reno Division (the "Nevada District Court") against, among others, Debtor and his
    wholly owned limited liability company, ART, LLC.

27
    [2] Epson's RJN, Ex. 3.
28
                                                                        (Continued...)

1  and their defaults entered.[3]  That recommendation was summarily adopted by District Court

2  Judge Robert C. Jones on August 22, 2017.[4]

3      Judge Cook's recommendation was based on mischaracterizations made to the court by

4  Epson that attributed to ART and the Debtor a pattern of continued discovery failures that, in

5  fact, were committed only by their co-defendants.

6      On May 26, 2017, Epson filed an emergency motion to compel and for sanctions.  This

7  filing was the first of a series of filings requesting terminating sanctions against all defendants

8  without identifying any failure by ART or the Debtor.  Epson represented:

> The Court has given Defendants multiple warnings and chances to comply,
> including declining to sanction them previously, but Defendants continue
> to disobey the Court's clear instruction to follow the rules, without
> justification. Docket No. 69. Not only have Defendants been warned by
> Plaintiffs regarding the consequences of their discovery failures, but the
> Defendants appear to ignore even the Court's instructions to comply with
> their discovery obligations conveyed on numerous occasions through
> counsel, once to two of the individual defendants and their corporations
> prior to the settlement conference, and once to all of the defendants
> immediately following the settlement conference. Docket Nos. 65, 65-1,
> 69-70. The possibility of sanctions for Defendants' failure to comply with
> their discovery obligations, from waiver of objections to terminating
> sanctions, were expressly discussed. Docket Nos. 65, 65-1, 69-70.[5]

Despite referencing three different pleadings in the case (Docket Nos. 65, 69 and 70) as

evidence of "continued and unexcused discovery failures," none of those pleadings had

anything to do with ART or the Debtor.  Docket No. 65 simply provided for counsel to meet

and confer to agree on documents to be produced to have meaningful settlement discussions.[6]

Docket No. 69 was the minutes of proceedings before Magistrate Judge Cooke in which she

---

[3] Epson's RJN, Ex. 13 (Report and Recommendation of U.S. Magistrate)

[4] Epson's RJN, Ex. 16 (Order).

[5] Debtor's Request for Judicial Notice ("DRJN"), Ex. 1 (Plaintiffs' Emergency Motion to Compel and for Sanctions), p. 6, lines 17-28.

[6] DRJN, Ex. 2 (Minutes of Proceedings April 10, 2017).

(Continued...)

considered imposing sanctions on co-defendants Andriy Kravchuk and Igor Bielov for failure to appear, but noted that Koshkalda did appear.[7]  Docket No. 70 was another set of minutes of proceedings which reflected nothing more than a lifting of the discovery stay due to settlement discussions at a settlement conference being unsuccessful.[8]

On June 28, 2017, Epson renewed its motion to compel and request for terminating sanctions.[9]  Epson cited docket entries as proof of continued intransigence, but, again, those docket entries had nothing to do with ART or the Debtor:

> The Court has given Defendants multiple warnings and chances to comply, including declining to sanction them previously, and later sanctioning them, but Defendants continue to disobey the Court's clear instruction to follow the rules and Court orders, without justification. Docket Nos. 65, 65-1, 69-70, 84, 88; Wang Decl. at ¶¶ 3-8, 10. The fact that Plaintiffs are able to obtain more documents than Defendants underscores the lack of effort Defendants have undertaken to obtain their own documents and comply with the Court's Orders. Wang Decl. at ¶¶ 3, 11.[10]

In addition to those entries referenced in their first motion to compel, Epson pointed to docket entries 84 and 88.  Docket entry 84 contains minutes of proceedings before Judge Cook which reflect that InkSystem and Lucky Print failed to properly designate a 30(b)(6) deponent.[11]  By contrast, exactly 3 months earlier, the Debtor had provided 329 pages of candid deposition testimony as ART's 30(b)(6) deponent.  Docket entry 88 was an order granting Epson's motion to compel and for sanctions against InkSystem, Lucky Print, and Andriy Kravchuk.[12]  Not only

---

[7] DRJN, Ex. 3 (Minutes of Proceedings April 17, 2017).

[8] DRJN, Ex. 4 (Minutes of Proceedings April 21, 2017).

[9] DRJN, Ex. 5 (Plaintiffs' Renewed Motion to Compel and for Terminating Sanctions Against Defendants ART LLC, AF LLC, Inkredible LLC LLC, Andriy Kravchuk, Artem Koshkalda, Igor Bielov, and Vitalii Maliuk).

[10] Id., p. 5(line 26)-p. 6(line 4).

[11] DRJN, Ex. 6 (Minutes of Proceedings June 28, 2017).

[12] Epson's RJN, Ex. 12 (Order Granting Plaintiffs' Motion to Compel and for Sanctions against Defendants InkSystem LLC, Lucky Print LLC, and Andriy Kravchuk).

(Continued...)

was that order unrelated to ART or the Debtor, but it was issued on account of an Epson motion that had not even sought relief against ART or the Debtor.[13]

It is clear from Judge Cooke's report and recommendation of terminating sanctions that the court was misinformed by Epson's repeated distortions.  The report provided:

> Plaintiffs have accurately recounted the history of defendants' litigation tactics (See ECF Nos. 80, 85, 91). Defendants have repeatedly disobeyed court orders, applicable rules, and plaintiffs' properly propounded discovery requests. Defendants continue to withhold evidence directly related to the issues of this case and have repeatedly shown their intention to continue to violate court orders and ignore discovery obligations. Plaintiffs now seek case-terminating sanctions against defendants for their continued bad faith in the face of court orders, admonitions, and sanctions.
> . . .
> The court agrees that terminating sanctions are appropriate at this time. Defendants were specifically admonished in this court's June 19, 2017 order, that if they again failed to comply, this court would issue a report and recommendation that all of defendants' answers be stricken and their defaults entered.  (See ECF No. 88).  Due to defendants' repeated disobedience and failure to comply with this court's orders, it is appropriate to strike defendants' answers and enter default judgments against them.[14]

Docket entries 80 and 91 are the two overbroad motions to compel described above.  Those were clearly misinformation.  Docket No. 85 was a motion to compel and for sanctions against InkSystem, Lucky Print, and Kravchuk[15] - nothing to do with ART or the Debtor.  Docket No. 88 was the Court's order assessing sanctions against InkSystem, Lucky Print, and Kravchuk, with the cited warnings – again, nothing to do with the Debtor.  In sum, Epson repeatedly misinformed the District Court, and the result is a bogus, threatened default judgment in the amount of $12 million.

---

[13] DRJN, Ex. 7 (Plaintiffs' Motion to Compel and for Sanctions Against Defendants Inksystem LLC, Lucky Print, LLC and Andriy Kravchuk).

[14] Epson's RJN, Ex. 13 (Report and Recommendation of Magistrate Judge), p 2, lines 16:23 and p. 3, lines 17:12-18).

[15] DRJN, Ex. 7 (Plaintiffs' Motion to Compel and for Sanctions Against Defendants InkSystem LLC, Lucky Print LLC, and Andriy Kravchuk).

### III.   COMMENCEMENT OF THE DEBTOR'S BANKRUPTCY CASE, AND EPSON'S NONDISCHARGEABILITIY ACTION.

The Debtor and ART commenced Chapter 11 cases on January 5, 2018.  Following a hearing on March 8, 2018, their cases were converted to Chapter 7 cases.

On April 30, 2018, Epson filed a claim- in the amount of $12,000,000- against the Debtor in the bankruptcy case.  That claim- which is unliquidated- has been assigned Claim No. 8 by the Bankruptcy Court.

On May 1, 2018, Epson commenced its Adversary Proceeding.

Epson would have the Court believe that this litigation simply rehashes what was at issue in the Infringement Action, but even a cursory review of the seven claims reveals that much more is at issue, and that the infringing conduct Epson alleges Mr. Koshkalda engaged in is a tangential part of this litigation.  Seven distinct claims are asserted by Epson against Mr. Koshkalda here.

The first claim seeks denial of discharge based upon alleged fraudulent transfers of real property the Debtor made to his limited liability companies before this case, and alleged transfers to others, prepetition.  It has nothing to do with the infringing activities Epson alleges Mr. Koshkalda engaged in.  The second claim seeks denial of discharge for failure to preserve records, under 11 U.S.C. § 727(a)(3). The third claim seeks denial of discharge for failure to explain loss of assets, under 11 U.S.C. § 727(a)(5).  The fourth claim seeks denial of discharge for "wrongful acts concerning insider," under 11 U.S.C. § 727(a)(7), through alleged destruction of records.  The fifth claim seeks a determination that Epson's claim is nondischargeable under 11 U.S.C. § 523(a)(2), for alleged fraudulent transfers.  The sixth claim seeks a determination that Epson's claim is nondischargeable under 11 U.S.C. § 523(a)(2), for alleged fraud defined by the infringing conduct.  And the seventh claim seeks a determination that Epson's claim is nondischargeable under 11 U.S.C. § 523(a)(6), for "willful and malicious injury," defined by the alleged infringement.

While the sixth and seventh claims have the alleged infringement as their core, the other claims do not.

1    Recent orders entered by the Bankruptcy Court demonstrate that Epson's Motion should

2  be denied.

3    On June 28, 2018, the Bankruptcy Court entered an "Order Granting Motion For Relief

4  From Automatic Stay Under 11 U.S.C. § 362," wherein Judge Blumenstiel granted Epson's

5  request to permit judgment to be entered in the Infringement Action, and to be appealed from by

6  the Debtor.[16]  On July 6, 2018, the Court also entered an "Order Granting In Part And Denying

7  In Part Motion By Plaintiffs Seiko Epson Corporation And Epson America, Inc. For A

8  Temporary Stay Until District Court Rules On Their Motion For A Temporary Stay Until

9  District Court Rules On Their Motion (A) To Withdraw Reference And (B) To Transfer Case,"

10  wherein the Court denied Epson's efforts to have discovery stayed as to the first through fifth

11  claims in this Adversary Proceeding.[17]

12    With the entry of the aforementioned orders, the obvious course is to deny Epson's

13  Motion, and permit the Bankruptcy Court to determine whether the Debtor is entitled to a

14  discharge.  If the Debtor is ultimately determined to have engaged in the infringing activities

15  Epson alleges he committed, the Bankruptcy Court can appropriately take that into account, and

16  vice versa. But to transfer this entire litigation to Nevada makes no sense at all.

17                                     **LEGAL ARGUMENT**

18  **I.    STANDARDS APPLICABLE TO WITHDRAWAL OF THE BANKRUPTCY**
           **REFERENCE.**
19

20    Withdrawal of the reference of an adversary proceeding from bankruptcy court is

21  governed by 28 U.S.C. § 157(d), which provides:

22       The district court may withdraw, in whole or in part, any case or
         proceeding referred under this section, on its own motion, or on timely
23       motion of any party for cause shown. The district court shall, on timely
         motion of a party, so withdraw a proceeding if the court determines
24       that resolution of the proceeding requires consideration of both title 11
         and other laws of the United States regulating organizations or
25       activities affecting interstate commerce.

26  _____

27  [16] See Ex. A to the Declaration of Gregory A. Rougeau (the "Rougeau Decl.") filed concurrently
    herewith.

28  [17] Rougeau Decl., Ex. B.

1   28 U.S.C. § 157(d).

2         This statute "contains two distinct provisions: the first sentence allows permissive

3   withdrawal, while the second sentence requires mandatory withdrawal in certain situations." *In*

4   *re Coe–Truman Techs., Inc.,* 214 B.R. 183, 185 (N.D.Ill.1997). Under either provision, the

5   "burden of persuasion is on the party seeking withdrawal." *FTC v. First Alliance Mortgage Co.*

6   *(In re First Alliance Mortgage Co.),* 282 B.R. 894, 902 (C.D.Cal.2001).  Epson has completely

7   failed to sustain that burden here.

8   **II.     MANDATORY WITHDRAWAL OF THE REFERENCE IS NOT WARRANTED.**

9         Withdrawal of the reference is mandatory if "resolution of the proceeding *requires*

10  consideration of both title 11 and other laws of the United States regulating organizations or

11  activities affecting interstate commerce." 28 U.S.C. § 157(d) (emphasis added); *Sec. Farms v.*

12  *Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers,* 124 F.3d 999, 1008 (9th

13  Cir.1997). The Ninth Circuit has suggested that mandatory withdrawal hinges "on the presence

14  of substantial and material questions of federal law." *See id.* at 1008 n. 4 ("By contrast,

15  permissive withdrawal does not hinge on the presence of substantial and material questions of

16  federal law.").

17        The mandatory withdrawal provision should be construed narrowly so as to avoid

18  creating an "'escape hatch' by which bankruptcy matters could easily be removed to the district

19  court." *In re Vicars Ins. Agency, Inc.,* 96 F.3d 949, 952 (7th Cir.1996). Thus, the consideration

20  of non-bankruptcy federal law must entail more than "routine application" to warrant mandatory

21  withdrawal. *In re Ionosphere Clubs, Inc.,* 922 F.2d 984, 995 (2d Cir.1990); *see also Hawaiian*

22  *Airlines, Inc. v. Mesa Air Grp., Inc.,* 355 B.R. 214, 222 (D. Haw. 2006) ("Cases involving

23  significant interpretation require mandatory withdrawal, while those involving simple

24  application do not.") (citing *City of New York v. Exxon Corp.,* 932 F.2d 1020, 1026 (2nd

25  Cir.1991)).

26        The narrow construction applied to mandatory withdrawal of the reference demonstrates

27  that the Motion should be denied. As recognized by the Bankruptcy Court in its above-

28  described orders, most of the Plaintiffs' claims do not require "substantial and material

1  consideration" of federal trademark law.  As to the two claims that do concern trademark law,

2  those claims are already before the District Court in Nevada.  Mandatory withdrawal of the

3  bankruptcy reference is not warranted.

4  **III.  PERMISSIVE WITHDRAWAL OF THE REFERENCE IS ALSO NOT
        APPROPRIATE.**

5

6  Withdrawal is permissive "for cause shown." 28 U.S.C. § 157(d); *Sec. Farms,* 124 F.3d

7  at 1008. "It is within a district court's discretion to grant or deny a motion for permissive

8  withdrawal of reference." *In re EPD Inv. Co. LLC,* 2013 WL 5352953, at *2 (C.D. Cal. 2013).

9  To determine whether cause for permissive withdrawal exists, a district court "should

10  first evaluate whether the claim is core or non-core, since it is upon this issue that questions of

11  efficiency and uniformity will turn." *In re Orion Pictures Corp.,* 4 F.3d 1095, 1101 (2nd Cir.

12  1993). Next, the "district court should consider the efficient use of judicial resources, delay and

13  costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping,

14  and other related factors." *Sec. Farms*, 124 F.3d at 1008.

15  None of the above factors militates in favor of permissive withdrawal of the reference.

16  **A.  Efficient Use Of Judicial Resources.**

17  Considerations of judicial resources dictate that the Bankruptcy Court retain this case.

18  To the extent that issue of trademark law must be litigated, they will be litigated in Nevada, as

19  Judge Blumenstiel has already recognized.  As to the remaining claims- i.e., the majority of the

20  claims in this case- the Bankruptcy Court has already authorized the parties to conduct

21  discovery on those claims.  To withdraw the reference now, and transfer the case to Nevada,

22  would waste resources, not conserve them.

23  In analyzing the efficiency factor, courts first consider whether the Bankruptcy Court

24  has jurisdiction to enter final judgment for the claims at issue. See *In re Rosales*, 2013 WL

25  5962007, at *5 (N.D. Cal. Nov. 7, 2013) ("The efficiency inquiry requires the Court to

26  determine whether the Bankruptcy Court has jurisdiction to enter final judgment."). Because

27  bankruptcy judges are not Article III judges, "the Constitution limits their ability to

28  adjudicate—i.e., to render a final judgment—to issues that are at the 'core' of the bankruptcy

1    power." *In re Harris*, 590 F.3d 730, 737 (9th Cir. 2009). For matters that are "non-core," a

2    bankruptcy judge may make only proposed findings of fact and conclusions of law to the

3    district judge, who reviews all non-core matters de novo. 28 U.S.C. § 157(c)(1). Thus, whether

4    the Bankruptcy Court can enter final judgment turns principally on whether a claim is core or

5    non-core. *Id*. § 157.

6           This litigation is unquestionably a core bankruptcy proceeding.  Indeed, 28 U.S.C. §

7    157(b)(2) specifically lists "determinations as to the dischargeability of particular debts" as core

8    matters. The Bankruptcy Court can therefore enter final judgment in this Adversary Proceeding

9    and should be permitted to do so.  The core nature of this proceeding weighs against

10   withdrawing the reference.

11          **B.    Delay And Costs To The Parties.**

12          The second factor applicable to permissive withdrawal of the reference also militates

13   against granting the Motion. The Plaintiffs claim that "the Nevada District Court will not have

14   the 'learning curve' about Debtor's and his co-conspirators' conduct that the Bankruptcy Court

15   or this Court would have." That contention is ludicrous: most of the claims do not concern

16   Debtor's alleged infringement; as to those claims, the Nevada District Court would have the

17   same "learning curve" that either the Bankruptcy Court or this Court would have. With regard

18   to the alleged infringement, default judgment will be entered as to those claims, that judgment

19   will be appealed from, and a final determination of the alleged infringing conduct will be made,

20   so there will be no need for the Bankruptcy Court to become more familiar with those claims.

21   Withdrawing the reference, and transferring the proceeding to Nevada, will only delay this

22   litigation, and dramatically increase the parties' costs, as the Debtor resides here, his attorneys

23   are here, and Epson's attorneys are in Southern California.  This core matter belongs with the

24   Bankruptcy Court.

25          **C.    Uniformity Of Bankruptcy Administration.**

26          Because the dischargeability of the Defendant's debts is a core matter, "[t]he uniformity

27   of bankruptcy administration would be adversely affected if this Court were to withdraw

28   reference with respect to a claim more properly within the Bankruptcy Court's competence." *In*

1  *re Rosales*, 2013 WL 5962007, at *7 (finding that uniformity factor weighed against

2  withdrawing the reference); see also *Orion Pictures Corp.*, 4 F.3d at 1101 ("questions of

3  efficiency and uniformity will turn" on "whether the claim is core or non-core").  By the time

4  this Court conducts the hearing on Epson's Motion, the bankruptcy case will have been pending

5  for nearly 11 months, and this Adversary Proceeding for six. The Bankruptcy Court is in a far

6  better position than this Court or the Nevada District Court to determine this Adversary

7  Proceeding within the context of Debtor's Chapter 7 case.

8          **D.      Prevention Of Forum Shopping.**

9          The final factor applicable to permissive withdrawal of the bankruptcy reference- forum

10  shopping- should be dispositive as to Epson's Motion. With most of Epson's claims having

11  nothing to do with federal trademark law, Epson seeks to have this entire case transferred to

12  Nevada, where it has essentially- and improperly- "run the table" in the Infringement Action.

13  Epson's Motion seems motivated by its apparent belief that because the Nevada District Court

14  has previously ruled in its favor in the Infringement Action, that court would respond more

15  favorably to its nondischargeability claims than the Bankruptcy Court.  Notions of substantial

16  justice and fair play dictate that the case should remain in the Bankruptcy Court: the Debtor is

17  in Chapter 7 here, this is a core bankruptcy matter, and the administration of the bankruptcy

18  case will occur here in any event.

19          Epson's assertions as to permissive withdrawal of the reference are nearly identical to

20  those made by Facebook, Inc., just last year, in this district, in *Facebook, Inc. v. Vachani*, 577

21  B.R. 838 (N.D. Cal 2017).  In that case, Facebook commenced prepetition litigation for among

22  other things, fraud and trademark infringement, against the CEO of a website that offered to

23  integrate users' various social media accounts, including those maintained on Facebook, into a

24  single experience. After judgment was entered against the defendant in the District Court, the

25  defendant sought bankruptcy protection, and Facebook commenced an adversary proceeding to

26  have its judgment debt declared nondischargeable. Facebook later moved to withdraw the

27  reference, claiming that the District Court should withdraw the reference on a permissive basis,

28  as the District Court had rendered the decision in the underlying litigation, and was "thoroughly

1   familiar with the Debtor's litigation tactics." Notwithstanding the nature of the underlying case,

2   and notwithstanding that the District Court had itself heard the underlying case, the District

3   Court denied Facebook's motion, after exhaustively examining each of the aforementioned

4   factors applicable to permissive withdrawal of the reference.  This Court should make a similar

5   determination here and deny Epson's Motion.

6   **IV.    THIS ADVERSARY PROCEEDING SHOULD NOT BE TRANSFERRED TO**
        **NEVADA.**

7

8           As the reference should not be withdrawn- on either a mandatory or permissive basis-

9   the Court should not consider Epson's argument that this Adversary Proceeding should be

10  transferred to Nevada.

11          In its Motion, Plaintiffs assert that the disjunctive grounds in 28 U.S.C. § 1412—"the

12  interest of justice" and "for the convenience of the parties"—supports transfer of this litigation

13  to Nevada.  Nonsense.

14          Overlooked by Epson in its Motion is that there is "a strong presumption in favor of

15  placing venue in the district where the bankruptcy proceedings are pending." *Dwight v.*

16  *TitleMax of Tenn., Inc.,* 2010 WL 330339, at *2 (E.D. Tenn. 2010); *Steed v. Buckalew (In re*

17  *Rivas),* 2009 WL 3493597, at *2 (Bankr. E.D. Tenn. 2009) (citing *In re Gurley,* 215 B.R. 703,

18  708–09 (Bankr. W.D. Tenn. 1997)). Here, Plaintiffs have failed to meet their burden to prove

19  that either ground provides a proper basis to transfer, particularly considering the Bankruptcy

20  Court's June 28, 2018 orders.

21          **A.    The Interests Of Justice Will Not Be Served By Transferring This Case.**

22          Under the heading of the interests of justice, courts have considered, in addition to the

23  location of the pending bankruptcy: whether the transfer would promote the economic and

24  efficient administration of the bankruptcy estate; whether the interests of judicial economy

25  would be served by the transfer; whether the parties would be able to receive a fair trial in each

26  of the possible venues; whether either forum has an interest in having the controversy decided

27  within its borders; whether the enforceability of any judgment obtained would be affected by

28

1   the transfer; and whether the plaintiff's original choice of forum should be disturbed. *TIG Ins.*

2   *Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001).

3        None of the aforementioned factors weighs in favor of Epson's Motion.

4        First, the Debtor's Chapter 7 case was filed here, and the Debtor lives here.

5        Second, transfer of this litigation would not promote the economic and efficient

6   administration of the bankruptcy estate. Most of the claims asserted by Epson in its Complaint

7   do not concern alleged infringement, but other conduct Epson accuses the Debtor of.  Transfer

8   of the litigation to a remote forum, when the Debtor and his bankruptcy counsel are here, makes

9   no sense.

10       Third, as asserted above in connection with permissive withdrawal of the reference,

11  transfer of this case would not serve interests of judicial economy.

12       Fourth, given the history of the Infringement Action and Epson's blatant effort to shop

13  this case to Nevada, the Debtor submits that his interest in receiving a fair trial dictate that this

14  Adversary proceeding be heard here, by the Bankruptcy Court.

15       Fifth, simple common sense dictates that California has an interest in having cases filed

16  within its borders heard in this state. See, e.g. *Son v. Coal Equity, Inc.* (*In re Centennial Coal,*

17  *Inc.*), 282 B.R. 140, 148 (D.Del.2002) (a California court does have a "greater interest in

18  deciding issues which may affect [California] residents and/or the development of [California]

19  law.").

20       Finally,[18]  the Plaintiffs original choice of forum will not be disturbed by denial of the

21  Motion. Epson has asserted several claims in this case other than infringement; as to the claims

22  that concern infringement, the parties have now been granted relief from the automatic stay to

23  address those claims in Nevada. While the Infringement Action was commenced in Nevada,

24  there is no support whatsoever for Plaintiffs' proposition that this entire Adversary Proceeding

25  should be transferred there.

26

27  _____

28  [18] The sixth factor- whether the enforceability of any judgment obtained would be affected by the transfer, are not strongly implicated by this Adversary Proceeding.

14

In sum, transferring this litigation to Nevada, when most of the claims asserted against the Debtor do not concern the alleged infringement at issue in the Infringement Action, would not serve the interests of justice. Transferring the case would be a miscarriage of justice.

**B.    The Convenience Of The Parties Weighs Strongly Against Transfer Of The Litigation.**

Under the heading of the convenience of the parties, courts have considered the location of the plaintiff and the defendant, the ease of access to the necessary proof, the convenience of the witnesses and the parties and their relative physical and financial condition, the availability of the subpoena power for unwilling witnesses, and the expense related to obtaining witnesses. *TIG Ins. Co. v. Smolker,* 264 B.R. 661 at 668.

As with the various factors applicable to whether the interests of justice would be served through a transfer of venue, none of the factors applicable to the convenience of the parties militates in favor of the Motion.

First, the Debtor lives here; his bankruptcy counsel is here; he filed his bankruptcy case here. With respect to Epson, its attorneys are in Southern California. This Adversary Proceeding should stay here, in California.

Second, the ease of access to the necessary proof supports maintaining the Adversary Proceeding here.  Most of Plaintiffs' claims against the Debtor concern alleged fraudulent transfers of real property, failure to preserve records, failure to explain loss of assets, and "wrongful acts concerning an insider."  The proof as to those claims is either electronic, or is located here, where the Debtor resides.

Third, the convenience of the witnesses and the parties and their relative physical and financial condition dictates that this case remain here. The primary witnesses to the conduct alleged in the Complaint are the Debtor and Epson, and perhaps Epson's counsel. While Epson might wish to go back to Nevada to litigate this case, it is in a decidedly different posture than the Defendant: Epson is a multibillion dollar enterprise, and the Defendant is a debtor in bankruptcy.  Moving this litigation to Nevada would operate to Epson's decided benefit, and would unfairly prejudice the Debtor, and courts often refuse to transfer proceedings if it would

1    increase the debtor's costs—even if doing so would inconvenience the movant or its witnesses.

2    *See, e.g.*, *Hechinger Inv. Co. of Del., Inc. v. M.G.H. Home Improvement, Inc.* (*In re Hechinger*

3    *Inv. Co. of Del., Inc.*), 288 B.R. 398, 403 (Bankr. D. Del. 2003); *Frazier v. Lawyers Title Ins.*

4    *Corp.* (*In re Butcher*), 46 B.R. 109, 113 (Bankr. N.D. Ga. 1985).

5         Fourth, the availability of the subpoena power for unwilling witnesses is not strongly

6    implicated in this case. As set forth above, the primary witnesses to most of the conduct alleged

7    in the Complaint are the Debtor and Epson, and perhaps Epson's counsel, and the proof is

8    largely in electronic or paper format.  Further, to the extent a witness in Nevada needs to be

9    deposed, the parties have essentially nationwide subpoena power pursuant Federal Rule of Civil

10   Procedure 45, under which a subpoena may be served outside this district, so long as the service

11   occurs within 100 miles of the place of deposition named in the subpoena. *See* Fed. R. Civ. P.

12   45(b)(2).

13        Similarly, the expense related to obtaining witnesses is not a material consideration here.

14   To the extent that witnesses are in Nevada, they may be deposed through service of a subpoena

15   under Fed. R. Civ. P. 45(b)(2). The parties would have to bear the expense of travel to Nevada

16   to conduct discovery regardless of whether this case were maintained here or transferred there.

17        Simply put, the convenience of the parties- particularly the disparity in the financial

18   considerations between Epson and the Debtor- weigh strongly in favor of keeping the case here.

19        To that end, Epson's reliance on *In re Bauer*, 2010 WL 1905087 (Bankr. E.D. Tenn

20   2010) is inapposite.  That case concerned the dischargeability of debts incurred by the debtors,

21   who owned a construction company, related to work they contracted to perform on the

22   plaintiffs' home, located in Nevada. The debtors moved from Oregon, where the property and

23   witnesses were located, to Tennessee, and filed for bankruptcy protection there. After filing a

24   nondischargeability action in the debtors' bankruptcy case related to the construction contracts,

25   the plaintiffs moved to change the venue of the adversary proceeding to Nevada, and the Court

26   granted that motion.  Material to the court's decision was that the subject property was in

27   Oregon, the witnesses to the contracts and work were in Oregon, and the health condition of one

28   of the plaintiffs, who had lupus. Those considerations do not exist here.

1    While Epson accurately sets forth that the alleged infringement occurred in Nevada,

2 most of the claims asserted in the Complaint- for, among other things, fraudulent transfers of

3 real property, failure to preserve records, failure to explain loss of assets, and "wrongful acts

4 concerning an insider"- do not seek recovery based on infringement and have no nexus to

5 Nevada at all.[19] Epson implies that its Complaint is only about infringement, and it is not. Most

6 of what Epson complains of occurred here or occurred through electronic means.  The case

7 should remain here, in Bankruptcy Court.

8 **CONCLUSION**

9    For the foregoing reasons, the Debtor respectfully requests that the Court deny

10 Plaintiffs' Motion. This litigation should be heard by the Bankruptcy Court.

11

12 DATED: July 13, 2018                          BRUNETTI ROUGEAU LLP

13

14                                       By:    */s/ Gregory A. Rougeau*

15                                              Gregory A. Rougeau
                                               Counsel for ARTEM

16                                             KOSHKALDA, Debtor and
                                               Defendant

17

18

19

20

21

22

23

24

25

26

27

28

---

[19] Indeed, Epson concedes that the fraudulent transfer of real property alleged in Epson's Complaint occurred in San Francisco. It cannot seriously assert at the same time that none of the underlying events occurred here.

17